UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MACKINNON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>C. GRAY, MELERO, A. MURRIETA,<br><br>　　　　Defendants. | Case No. 1:18−cv−00964−DAD−HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 36) |

　　Before the Court is the Motion for Summary Judgment filed by Defendants Gray, Melero, and Murrieta on April 16, 2020. (Doc. No. 36, "MSJ"). On May 15, 2020, Plaintiff Sean MacKinnon ("Plaintiff" or "MacKinnon"), a state prisoner represented by counsel, filed an opposition. (Doc. Nos. 42-44). On May 28, 2020, Defendants filed a reply brief (Doc No. 45), as well as a reply separate statement (Doc. No. 45-1). On March 11, 2021 and April 20, 2021, Plaintiff submitted additional evidence in support of his MSJ opposition. (Doc. Nos. 47-48). For the reasons stated below, the undersigned recommends that the Court grant Defendants' motion.

**BACKGROUND**

　　The incident giving rise to this case occurred on August 9, 2017. (Doc. No. 1 at 1:18-2:9). (Doc. No. 1 at 1:18-2:9). On August 11, 2017, two days after the incident, in a call to his mother,

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Eastern District of California Local Rule 302 (E.D. Cal. 2019).

1  Sandra MacKinnon, Plaintiff stated:

> OK, just listen so. All I fucking need to say is that I can't have any money on my books. So I'm going to have, I'm going go spend the rest of the money that I got . . . . And then I'm going to have to keep my, my books at a zero balance from here on out. Uh, and that way they don't charge me for when I go to the doctor for medical care, they don't charge me, uh uh, court fees, or, or attorney's fees, or legal mail doesn't cost me nothing. So, I gotta play indigent for a while. But, it doesn't matter, I still get packages. And I can still put money in other people's names, which we'll just start doing, we'll just keep doing what we've been doing . . . .

(Doc. No. 42-1 at 38:7-38:3; *see also* Doc. No. 42-2 at 7:21). That same day, in a call to his mother, Plaintiff stated: "So, the important thing is though for, for me, he said, is that I stay with a zero balance . . . . I'm going to zero . . . I just fucking said I need to have no money on my books. None. I need to zero my balance out." (*Id.* at 37:18-38:6).

Five days after the incident, on August 14, 2017, in a call to Kelsey Carver, a person with whom Plaintiff had a romantic relationship at one time (Doc. No. 42-2 at 3:28), Plaintiff stated: "Bottom line is . . . I have to zero, I have to zero my books out . . . . zero it out and then all my, all my, um, my, my, my, my, all my stuff is gonna be free . . . and, and, and on their tab . . . otherwise it's going to cost me hundreds of dollars . . . ." (Doc. No. 42-1 at 39:4-19). A few weeks later, on September 4, 2017, in a call to Kelsey Carver, Plaintiff stated: "I either go to the store or I have a package. I can't go to the store right now because I have to keep a zero fucking balance on my books" and "[t]he person that was getting my package wanted a watch, so I was getting it for him . . . . She told me I could spend up to $300 per month . . . . I have to keep a low . . . . I told you, I have to keep a zero balance in order for them to not charge me all the attorneys' fees and everything and paperwork fees. So I have to keep a zero balance for six months . . . . It's fines and fees, court . . . ." (*Id.* at 39:20-4:22).

Just over a month after the incident, on September 22, 2017, in a call to Kelsey Carver, Plaintiff stated: "She can only do it once a month . . . . I told her I'd find a person that doesn't have, uh, restitution on his books. She can't do it on my books because I have restitution. So every month I have to find somebody new . . . . I have to have no money on my books for six months in order for me to get all the free, uh, uh lawyer fees paid for and everything." (*Id.* at

2

1   40:23-41:11).

2   In a June 12, 2018 email to Plaintiff, Plaintiff's mother wrote: "I got the docs from Ken via email and he told me that I couldn't send them to you because they're legal documents and so I asked him to send you copies too.  the letter you got from him is just an update on the case. not much to go on right now. need to keep your balance at 0$ for now. hang in there." (*Id.* at 41:12-24).

Plaintiff filed his complaint in this case on July 16, 2018, accompanied by a motion to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915.  (Doc. Nos. 1-2).  On his original IFP application, signed under penalty of perjury he stated "None" when asked to identify any "regular monthly expenses."  (Doc. No. 2 at 2 ¶ 6).  Pursuant to Court Order, Plaintiff submitted an amended IFP application, using the correct form for incarcerated persons, on September 21, 2018.  (Doc. Nos. 4-5).  On this IFP application, Plaintiff "declare[s] that I am unable to pay the fees for these proceedings or give security therefor."  (Doc. No. 5 at 1; Doc. No. 42-1 at 8:25-9:16). Plaintiff checks the "No" boxes when asked if he has received "any money from the following sources over the last twelve months": "[g]ifts or inheritances" or "[a]ny other sources." (Doc. No. 5 at 1 ¶ 3(e)-(f); Doc. No. 42-1 at 9:17-10:1).  The application is signed under penalty of perjury.  (*Id.* at 2; Doc. No. 42-1 at 10:2-8).  Plaintiff now states that he did not consider the money he received from his mother while he was in prison to be "gifts," but rather "support necessary to survive prison."  (Doc. No. 44-1 at 2:2-3).  He does not explain his understanding of "any other sources" or explain why he represented that he had not received "any money" from "any other sources" in the twelve months preceding his submission of the IFP application. (*See* Doc. No. 44-1).

Between the date of the incident giving rise to this case and the date Plaintiff submitted his amended IFP application in September 2018, Plaintiff's mother deposited $20 into Plaintiff's inmate trust account and $2,300 into other inmates' trust accounts.  (Doc. No. 36-3 at 2:12-3:13, 4-7; Doc No. 36-5 at 60:12-61:10; *see also* Doc. No. 42-2 at 8:2-4).

In an email to his aunt on December 8, 2018, Plaintiff wrote: "[S]o I sent her the names and numbers cause I have a law suit pending, so I CAN'T put money on MY books . . . . i have to

keep. zero ballance [sic] so they don[']t charge me court fees on me . . . ." (*Id.* at 41:25-42:10).

Between June 2017 (two months prior to the incident) and January 2020, Sandra MacKinnon deposited $5,513 (including the $2,300 noted above) into the inmate trust accounts of other inmates, and $560 into Plaintiff's inmate trust account. (Doc No. 36-3 at 2:12-3:13, 4-7; Doc No. 36-5 at 60:12-61:10). These inmate trust account deposits were made at Plaintiff's request and were used to purchase items for Plaintiff. (Doc. No. 42-1 at 13:7-14:27; 17:12-22:20, 23:1-9, 21:19-24:16, 24:24-28:2; *see* Doc. No. 36-5 at 59:13-20; 61:16-62:21; 63:10-14; 64:7-13; 68:15-69:9; *see also* Doc. No. 42-2 at 8:2-4). One of the reasons Plaintiff asked his mother to deposit money into other inmates' trust accounts is so he could avoid paying restitution until a later time. (Doc. No. 42-1 at 37:12-18).

On February 12, 2020, Plaintiff submitted supplemental responses to requests for admissions relating to, *inter alia*, statements he made to Kelly Carver around September 2017 regarding zeroing out his inmate trust account. (Doc. No. 36-5 at 35:19-36:6; 39:12-25). Shortly thereafter, on February 21, 2020, in a call to his mother, Sandra MacKinnon, the following exchange occurred: Plaintiff: "I just wanted to say that you gotta be more careful about . . . ."; Sandra: "Yes, I get it. I get confused. I'm not always sure what I can and can't say."; Plaintiff: "OK, OK, well, just uh, you know . . . ."; Sandra: "Don't talk about money."; Plaintiff: "No, mom." (*Id.* at 4:2-5, 42:11-43:1).

Plaintiff's inmate trust account statement dated March 25, 2021 reflects that his restitution is now paid. (Doc. No. 48).

**APPLICABLE LAW**

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing

1    there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf*
2    *Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere
3    "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle*
4    *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a
5    reasonable factfinder, drawing all inferences in favor of the nonmoving party, to find in that
6    party's favor. *See id.*

7    The court must view the evidence in the light most favorable to the nonmoving party.
8    *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility
9    determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Conclusory or speculative
10   testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and
11   defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007);
12   *see* Fed. R. Civ. P. 56(c)(2).

13   **B.  IFP Rules**

14   The ability to proceed in federal court without prepayment of the filing fee is a privilege,
15   not a right. *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960). A court may allow an
16   action brought by a prisoner to proceed with gradual payment of the filing fee, or with deferred
17   payment of the fee, in certain circumstances. *See* 28 U.S.C. § 1915(b)(1). Congress has not,
18   however, authorized litigants to proceed without prepayment of the filing fee whenever they
19   decide it would be best for them. *See* 28 U.S.C. § 1915.

20   To aid "in protection of the public against a false or fraudulent invocation of" the IFP
21   statute's benefits, a litigant seeking to proceed without prepaying the filing fee must submit an
22   affidavit under penalty of perjury. *Rowland v. California Men's Colony, Unit II Men's Advisory*
23   *Council*, 506 U.S. 194, 205 (1993) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S.
24   331, 338 (1948)). This is a significant requirement. "'[P]erjury is among the worst kinds of
25   misconduct' and cuts at the very heart of the mission of the federal courts." *Kennedy v.*
26   *Huibregtse*, No. 13-C-004, 2015 WL 13187300, at *2 (E.D. Wis. Nov. 13, 2015), *aff'd*, 831 F.3d
27   441 (7th Cir. 2016) (quoting *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014)). The sworn
28   affidavit required Plaintiff to declare that he could not afford the filing fee, to identify "any

5

money" received from any source in the preceding twelve months, and to provide a copy of his inmate trust account statement for the prior six months.  (*See* Doc. No. 5).

This district has recently surveyed the relevant cases and summarized the law applicable to dismissals under § 1915(e)(2)(A):

> Courts have not been totally uniform in their application of § 1915(e)(2)(A), but a close reading of the cases applying the statute reveals consistent considerations guiding the courts' analyses. The U.S. Court of Appeals for the Ninth Circuit provided a starting point in [*Escobedo v. Applebees*, 787 F.3d 1226, 1234 n.8 (9th Cir. 2015)], stating that, to dismiss a complaint under § 1915(e)(2)(A), the court must find that the allegation of poverty was not just inaccurate, but made in bad faith.  Consistent with that approach, other courts have concluded that, where the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice, for example, revoking IFP and provide a window for the plaintiff to pay the filing fee, or dismissing without prejudice. *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986); *Mahone v. Pierce Cnty.*, No. C14-5665 BHS-KLS, 2014 WL 6997734, at *3-4, 2014 U.S. Dist. LEXIS 170997 at *7-8 (W.D. Wash. Dec. 10, 2014); *Jacobsen v. Am. Honda Motor Co.*, No. CV 10-134-PK, 2010 WL 3118364, at *3, 2010 U.S. Dist. LEXIS 80060 at *4-9 (recommending dismissal without prejudice where plaintiff failed to disclose income on IFP application but the evidence did not conclusively show intentional misrepresentation).
>
> Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP application, and the absence of a showing of bad faith. *Escobedo*, 787 F.3d at 1234 n.8 (dismissal not warranted where plaintiff claimed to be paying a certain amount in "rent" despite actually owning her home, because her mortgage payment was equivalent to a payment of rent and plaintiff owned no equity in the home); *Camp*, 798 F.2d at 438-49 (reversing district court's dismissal where there was no finding that plaintiff's inaccuracy foreclosed IFP eligibility); *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 WL 549627, at *2, 2019 U.S. Dist. LEXIS 22837, at *2-5 (S.D. Cal. Feb. 13, 2019) (dismissal not warranted where plaintiff failed to reveal over $1,000 in settlement funds because such funds were immediately and entirely used to pay plaintiff's restitution fines); *Ruffin v. Baldwin*, No. 18-cv-1774-NJR, 2018 WL 6266652, at 4, 2018 U.S. Dist. LEXIS 203411 at *7-10 (S.D. Ill. Nov. 30, 2018) (dismissal not warranted where plaintiff did not list over $4,000 in settlement funds received in the six months preceding the application because the funds were revealed on the accompanying trust account statement (indicating no intent to conceal them) and because, by the date of the application, plaintiff had spent the money and was thus eligible for IFP); *Griffin v. Moon*, No. 1:12-cv-02034-LJO-BAM (PC), 2016 WL 8678564, at *3, 2016 U.S. Dist. LEXIS 130812, at *7 (E.D. Cal. Sept. 23, 2016) (dismissal not warranted where plaintiff had received funds between 8 and 20 years prior to his IFP application and there was no evidence

that he currently had such funds).

On the flip side, courts routinely dismiss with prejudice cases upon finding that the plaintiff has intentionally withheld information that may have disqualified plaintiff from obtaining IFP status or has otherwise manipulated his finances to make it appear that a plaintiff is poorer than he actually is; i.e., where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith. Thus, in *Kennedy v. Huibregtse*, 831 F.3d 441, 442-44 (7th Cir. 2016), the Seventh Circuit affirmed the district court's dismissal with prejudice of a complaint pursuant to § 1915(e)(2)(A) where the plaintiff failed to reveal that he had a trust account outside of prison, managed by a friend, containing about $1400 at the time of the plaintiff's IFP application. The court rejected plaintiff's claim that he did not know the balance of the account at that time and thought it had only about $10, because he spent over $600 from it just before and after the application. *Id.* at 444. Importantly, the court found that, even if the district court would have granted the plaintiff IFP status if it had known about the trust account, "hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive. A litigant can't say, 'I know how the judge *should* rule, so I'm entitled to conceal material information from him.'" *Id.* at 443 (emphasis in original).

Similarly, the Seventh Circuit affirmed a dismissal with prejudice under § 1915(e)(2)(A) where the plaintiff had not disclosed a savings account he controlled with a balance of over $32,000 at the time of his IFP application. *David v. Wal-Mart Stores, Inc.*, 669 F. App'x 793 (7th Cir. 2016). The court rejected the plaintiff's explanation that he regarded the account as off-limits because he kept that money for his family in case of financial hardship. *Id.* at 794. The plaintiff had used funds from the account to pay $600 for a seminar and thus his claim that he could not have used the money for the filing fee was disingenuous. *Id.* And, as in *Kennedy*, the court emphasized that the plaintiff must disclose assets to the court and allow the court to assess their availability to him. *Id.* at 794.

The Second Circuit reached the same conclusion in *Vann v. Comm'r of the N.Y.C. Dep't of Corr.*, 496 F. App'x 113 (2d Cir. 2012), affirming dismissal with prejudice where the plaintiff made false statements and intentionally concealed income on his IFP application. *Id.* at 114. Plaintiff had omitted about $2,000 of income from the application. *Id.* at 115-16. The court found irrelevant whether the plaintiff had spent the money before submitting his IFP application, because the statute required him "to accurately and truthfully state his financial history and assets," and he had not done so. *Id.* at 116. Moreover, the plaintiff was "an experienced litigator with extensive knowledge and familiarity with the in forma pauperis system." *Id.* This fact supported a finding of bad faith. *Id.* at 115 ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.")

> In a good number of cases finding bad faith, prisoner-plaintiffs have diverted funds in the period leading up to their IFP application to others, usually family members. In *Roberts v. Beard*, No. 15cv1044-WQH-RBM, 2019 WL 3532183, 2019 U.S. Dist. LEXIS 120744 (S.D. Cal. Aug. 2, 2019), the plaintiff had received a $3,000 settlement on October 21, 2014, transferred $2,000 to his sister on the same day, and used the remainder to pay outstanding court filing fees. *Id.* at *3-12. On April 14, 2015, the plaintiff submitted an IFP application indicating that he had not received any money from any other sources in the prior twelve months. *Id.* When the defendants sought dismissal under § 1915(e)(A)(2), the plaintiff claimed he had forgotten about the $3,000 settlement, had not benefitted from it, and no longer had the money at the time of his application. *Id.* at *10. The court rejected these claims as not credible based on the plaintiff's extensive litigation history and familiarity with the IFP process. *Id.* at *7-11 (quoting *Vann*).
>
> In *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463 (S.D.N.Y. 2004), the plaintiff sought IFP status on October 27, 1998, despite accepting settlement offers in two other cases totaling $13,500 in the prior three weeks. *Id.* at 464-65. She stated on her IFP application that she had enough money in an account in the community to pay the fee, but could not access the money because prison officials were not allowing her to receive checks. *Id.* at 464. She did not disclose the settlements. While her IFP application was pending, she asked that the settlement checks be sent to her mother, and they were. *Id.* at 465. At the same time, the plaintiff prohibited prison officials from receiving checks on her behalf. *Id.* She did not disclose to the court that she had herself created the barrier keeping checks out of her prison account. *Id.* at 466. The court found that plaintiff, who had obtained IFP status in 15 other suits, had diverted the funds to her mother's address to perpetuate a negative balance in her prison account while misrepresenting to the court that circumstances beyond her control made it unfeasible to have money deposited there. *Id.* at 468-69. This manipulation of the IFP system, especially in combination with similar conduct by the plaintiff in other cases, justified dismissal of her case with prejudice. *Id.* at 468-69.
>
> In *Richmond v. Housewright*, 101 F.R.D. 758 (D. Nev. 1984), the plaintiff did not reveal $2,100 in income he had received during the 12 months preceding his IFP application for work performed as an inmate law clerk and paid directly to the plaintiff's fiancée. Finding that the plaintiff had "deliberately lied," the court dismissed the case. *Id.* at 759.

*Witkin v. Lee*, No. 2:17-cv-0232-JAM-EFB, 2020 WL 2512383, at *3–5 (E.D. Cal. May 15, 2020), *report and recommendation adopted*, 2020 WL 4350094 (E.D. Cal. July 29, 2020), *appeal dismissed*, No. 20-17091, 2020 WL 8212954 (9th Cir. Dec. 9, 2020).

//

//

# ANALYSIS

## A. Whether the Motion is Authorized

Quoting Defendants' MSJ brief, Plaintiff briefly suggests that Rule 56 does not authorize this motion because it raises a matter collateral to the merits. (Doc. No. 42 at 1:22-2:6). Plaintiff is incorrect that summary judgment is limited to the merits. Any matter that affects the outcome of the suit can be raised by summary judgment. In any event, this is a curious argument as Rule 56 provides Plaintiff with greater procedural protections than other options Defendants could have chosen. In *Witkin*, quoted at length above, and the cases cited therein, the defendants either moved to dismiss directly under 28 U.S.C. § 1915 or the court *sua sponte* dismissed under that section. Thus, even if the Court denied this MSJ, dismissal under § 1915 would remain available.

## B. Evidentiary Objections and Rule 56(c)(1)

Plaintiff asserts a number of objections to Defendants' evidence. To the extent those objections relate to evidence relied upon by the Court in making these findings and recommendations, they are addressed categorically as follows.

### 1. Relevance of Plaintiff's July 2018 IFP Application

Plaintiff contends that his original IFP application (Doc. No. 2) is not relevant to this motion because it was "withdrawn" by the filing of the proper IFP form (Doc. No. 5). (Doc. No. 42-1 at 6:13-8:5, 10:10-28). He cites no legal authority or evidence for this position and the undersigned rejects it. The IFP application relates to Plaintiff's financial condition, was signed by Plaintiff under penalty of perjury and filed by his counsel and remains on the docket.

### 2. Relevance of Trust Account Deposits Outside Six-Month Window

Plaintiff objects on relevance grounds to evidence relating to deposits his mother made to inmate trust accounts outside the six-month window preceding his filing of the amended IFP application he signed on September 11, 2018. (*See, e.g.,* Doc. No. 42-1 at 10:10-11:11). Under 28 U.S.C. § 1915(a)(2), a prisoner seeking IFP status must submit a certified copy of his trust fund account statement for the six-month period immediately preceding the filing of the complaint (not the filing of the IFP application, as Plaintiff suggests). Nothing in § 1915 limits the court to consideration of this six-month window or the inmate trust account statement.

Indeed, the statute also requires the applicant to submit "an affidavit." 28 U.S.C. § 1915(a)(1). This district's IFP affidavit requires a prisoner to state whether the applicant has received any money from any source "over the last twelve months."[2] (Doc. No. 5 at 1). Here, Plaintiff filed one affidavit on July 16, 2018, and the second—the one primarily at issue—on September 21, 2018. Evidence relating to deposits outside the twelve-month period are relevant to determining whether the allegation of poverty made in the IFP application was true or whether it was made in bad faith to avoid the initial filing fee payment or subsequent payments. *See* 28 U.S.C. § 1915(b). Additionally, Plaintiff submits his own inmate trust account statements for periods outside the six- and twelve-month month periods preceding the filing of his amended IFP application. (Doc. No. 47 (relating to November 2020); Doc. No. 48 (relating to March 2021)). His relevance objection is overruled.

### 3. Relevance of Deposits into Media/Communication Accounts

Plaintiff also objects on relevance grounds to evidence relating to his mother's purchase of credits for Plaintiff's media usage and ability to communicate by phone and email from prison using the Jpay system. (Doc. No. 42-1 at 29:4-34:25). Plaintiff suggests that because his mother purchased credits, he did not receive cash that could have gone towards the filing fee. Even if Plaintiff may not have been required to disclose the purchase of these credits on his behalf on his IFP—a matter not resolved here—the purchases are still relevant to the issues in this motion. The IFP application requires both a listing of money received and a declaration of inability to pay. At a minimum, the media and Jpay credits are relevant to Plaintiff's ability to pay the filing fee. *See, e.g., McClafferty v. Portage County, Ohio Board of Commissioners*, 2021 WL 5755631, *5 (6th Cir. Dec. 3, 2021) (unreported) (parent's financial support, including funds for commissary, Jpay media, copying and mailing expenses relevant to IFP status).

### 4. Hearsay

Plaintiff objects on hearsay grounds to certain statements made by third parties to Plaintiff in email or recorded telephone calls. (Doc. No. 42-1 at 12:5-13:5; 13:25-15:5; 14:15-27; 22:15-

---

[2] The Administrative Office of the Court's Forms AO 239 (long form IFP) and AO 240 (short form IFP) likewise require the applicant to detail their finances during the preceding 12 months.

1   26:4; 26:20-26; 23:10-18; 24:17-23; 25:9-15; 27:7-13; 28:3-9; 29:4-34:25; 41:12-24; 42:11-28).
2   Generally, these statements appear to be offered for the truth, and so may be hearsay. Fed. R.
3   Evid. 801(c). As Defendants correctly point out, however, the content of these statements could
4   be admitted at trial through the testimony of the speaker/writer or through Plaintiff. This is all
5   that is required at summary judgment. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).
6   Plaintiff's hearsay objections are overruled.

            **5. Matters Deemed Admitted**

8   Rule 56(c)(1) requires a party asserting that a fact is disputed to (1) cite to evidence or (2)
9   show the materials cited by the moving party are insufficient or inadmissible. When the opposing
10  party fails to meet this burden, a court may deem the facts undisputed. Fed. R. Civ. P. 56(e)(2)-
11  (3). Throughout the separate statement, Plaintiff states that certain facts are "disputed," asserting
12  the relevance and/or hearsay objections overruled above. (Doc. No. 42-1 at 10:10-12:4; 15:1-
13  16:12; 17:12-19:22; 37:18-38:5). The undersigned considers these facts undisputed for purposes
14  of the motion.

            **C. Plaintiff's Allegation of Poverty Was Inaccurate**

16  The undisputed facts establish that Plaintiff's allegation of poverty was inaccurate. In his
17  IFP affidavit, Plaintiff declared under penalty of perjury that he had not received any money from
18  any source in the twelve months preceding the application. This statement was indisputably false.
19  For example, at least once a month from September 2017 to August 2018, Plaintiff's mother
20  deposited money into other inmates' trust accounts so that Plaintiff could purchase items for
21  himself. (*E.g.,* Doc. No. 36-3 at 5-6; Doc. No. 42-1 at 10:10-28). The monthly amounts range
22  from $55 in September 2017 to $270 in August 2018 and totaled over $2,200. (Doc. No. 36-3 at
23  5-6).
24  Plaintiff suggests that his allegation of poverty may not have been false because this was
25  really not that much money. (*See* Doc. No. 42 at 5-6). The undersigned disagrees. When a
26  litigant is incarcerated, most necessities of life are provided by the State. *Witkin v. Sloan*, No.
27  2:16-cv-2950-JAM-EFB, 2019 WL 6918216 at 2 (E.D. Cal. Dec. 19, 2019) (citing *Kennedy*, 831
28  F.3d at 443). Thus, courts have repeatedly held that when an inmate fails to disclose support in

1    the amount provided to Plaintiff, or even less, the inmate's statement of poverty is untrue. *See*

2    *Kennedy*, 831 F.3d at 442-44 ($1400); *Vann*, 496 F. App'x 113 ($2,000); *Roberts*, 2019 WL

3    3532183, 2019 U.S. Dist. LEXIS 120744 ($3,000); *Richmond*, 101 F.R.D. 758 ($2,100).  Plaintiff

4    received sufficient funds to pay all or part of the filing fee at the outset of this suit; his allegation

5    of poverty was untrue.[3]

6          Plaintiff also argues that his mother's "assets" cannot be considered because she was not

7    required to provide him with support and the money given was her "separate property."  (Doc.

8    No. 42 at 6:6-9).  But Plaintiff mistakes the inquiry here.  No one is investigating his mother's

9    assets and his obligation of candor under § 1915 was not limited to identifying support he

10   received by compulsion.  Family support actually provided to the litigant can be considered in

11   evaluating whether IFP status is warranted or was fraudulently obtained.  *See McClafferty*, 2021

12   WL 5755631, *5 (unreported) (parent's financial support relevant and warranted dismissal for

13   false IFP application) (citing *Sellers v. United States*, 881 F.2d 1061, 1063 (11th Cir. 1989);

14   *Williams v. Estelle*, 681 F.2d 946, 947 (5th Cir. 1982)); *Fausten v. AT&T Services, Inc.*, 2021 WL

15   6328354, *2 (N.D. Fla. Oct. 15, 2021) (prisoner plaintiff's receipt of $459 "from a family

16   member [] should have resulted in a payment of $91" to court).  Plaintiff and his mother could

17   have decided she would withhold support until the filing fee was paid.  They did not.  When she

18   continued to provide support, and he failed to disclose *any* of this support to the Court in

19   connection with his IFP application, he misrepresented his finances in violation of § 1915.

20         **D.  Plaintiff's Statements and the Deposit Transactions Establish Bad Faith**

21         The undisputed facts establish that Plaintiff made the inaccurate allegation of poverty in

22   bad faith.  Plaintiff states that he thought the money provided by his mother was money to be

23   used for necessities and therefore not income, gifts, or assets that needed to be reported on his IFP

24   application.  (Doc. No. 44-1 at 2:2-5).  Plaintiff did not report any of these necessary expenses to

25   the Court in his original IFP application.  (Doc. No. 2 at 2 ¶ 6).  And, if Plaintiff actually thought

26

27   [3] This becomes even more clear if one considers the support Plaintiff received from his mother for Jpay
     media and communications in the year leading up to the filing of this action.  The record reflects Plaintiff
28   received approximately $600 in Jpay credits.  (*See* Doc. No. 42-1 at 29:4-34:25).

the Court would not consider money he received for purported "necessities" relevant to the IFP determination or would exclude it from its evaluation, a matter he could have resolved with counsel's advice, there would have been no need to drain his trust account and funnel money through other inmates. Even accepting his statement as true, it does nothing to support his position that his misrepresentations were not made in bad faith. The affidavit plainly directs the applicant to disclose *any money from any source*. (Doc. No. 5). It does not carve out an exception for money received for necessities, nor is it limited to gifts, assets, or income. (*See id.*).

Moreover, the undisputed facts show that almost as soon as the incident giving rise to this case occurred, Plaintiff put a plan to into action focused directly on avoiding his court costs. *Two days after the incident*, Plaintiff told his mother, among other things, "I'm going go [sic] spend the rest of the money that I got . . . . And then I'm going to have to **keep my, my books at a zero balance** from here on out. Uh, and **that way they don't charge me for** when I go to the doctor for medical care, they don't charge me, uh uh, **court fees, or, or attorney's fees, or legal mail doesn't cost me nothing. So, I gotta play indigent for a while** . . . . (Doc. No. 42-1 at 38:7-38:3 (emphasis added); *see also id.* at 37:18-38:6). There is no question that his intent was to avoid paying the filing fee here, as it was specifically tied to the six-month inmate trust account period identified in § 1915. (*Id.* at 39:20-4:22, 40:23-41:11). In sum, Plaintiff decided to have his mother put money into other inmates' trust accounts, and give *them* a cut of the money, rather than direct any money to this Court. That is bad faith.

Plaintiff seeks to counter the argument that use of other inmates' trust accounts is evidence of bad faith by arguing that "Plaintiff believed he could defer making restitution until his release when he had employment." (Doc. No. 42 at 7:3-5). This purported statement of intention is belied by the evidence. Plaintiff's mother states that she and Plaintiff planned to pay his restitution before he was released (*i.e.*, the opposite of what Plaintiff contends in his brief). (Doc. No. 42-2 at 7:27-8:1). Plaintiff states nothing about his restitution plan in his own declaration (*see* Doc. No. 44) and has since submitted evidence to show that his restitution has been paid (Doc. No. 47-48). Even more critically, the fact that Plaintiff used other inmates' trust accounts to avoid restitution *as well as* to commit fraud on the Court does not assist him here.

1 Plaintiff apparently means to suggest that his obligation to be truthful to this Court was simply a
2 casualty of his desire to avoid paying restitution, at least until a time he found more convenient.
3 But this does not rebut the obvious conclusion that his misrepresentations to this Court were made
4 in bad faith.

### E. Dismissal With Prejudice is the Appropriate Remedy

When a plaintiff engages in the behavior documented here, dismissal with prejudice is appropriate. *See Witkin*, 2020 WL 2512383, *3-5 (and cases cited therein). As in *Witkin*, which the court dismissed with prejudice, "[t]hese facts show that plaintiff, rather than apprise the court of his true financial situation, intentionally kept funds out of his prison account (and off the court's radar) to improve his chances of obtaining IFP status. It is such conduct that § 1915(e)(2)(A) was enacted to prevent. [ ] Plaintiff did not commit a minor misstatement or omission; he manipulated how he received substantial income in order to conceal it from the court." *Id.* at 6. Plaintiff has engaged in bad faith misrepresentations and continued manipulation of his inmate trust account to thwart this Court's receipt of the filing fee and exercise a privilege to which he was not statutorily entitled. Dismissal with prejudice is warranted.

### F. Defendants' Other Arguments

Defendants argue that Plaintiff made money in prison by selling packages or "pen pal lists." (Doc. No. 36 at 13:10-14, 19:9-25). In discovery, Plaintiff asserted his Fifth Amendment rights to questions relating to these matters. (Doc. No. 42-1 at 34:26-37:10). Based on these discovery objections, Defendants ask the Court to draw an adverse inference against Plaintiff. (Doc. No. 36 at 19:9-25). Given the foregoing findings and recommendations to grant the MSJ, the undersigned finds these issues are not necessary to resolution of this motion.

### G. Plaintiff's Other Arguments

Plaintiff argues that he can commit fraud on the Court so long as the fraud does not cover up an untrue claim of poverty. (Doc. No. 42 at 7:14-17). Plaintiff forgets about his more general obligations to the Court. Under Rule 11, the person who signs, files, submits, or later advocates any paper to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," *inter alia*, the paper "is not

being presented for any improper purpose," and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1), (3).  The Court may, of course, sanction persons who violate Rule 11 and may exercise its inherent authority to respond to a party's bad faith conduct.  Fraud on the court is an example of bad faith conduct meriting sanctions under the court's inherent authority.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991) (affirming sanctions against plaintiff "for the fraud he perpetrated on the court").  Even if dismissal was not compelled or permitted by 28 U.S.C. § 1915(e)(2)(A), the undersigned would likely recommend that the Court rely on Rule 11 or its inherent authority to sanction Plaintiff and/or Plaintiff's counsel.

## CONCLUSION

Accordingly, it is RECOMMENDED:

1. Defendants' motion for summary judgment (Doc. No. 36) be granted and this case be dismissed with prejudice, any other motions be terminated, and the case closed.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  January 21, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE